**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**MARY WELSH,**

      **Plaintiff,**

**v.**                                                      **Case No. 3:08cv348/MCR/EMT**

**ASCENSION HEALTH,**

      **Defendant.**

_____/

**O R D E R**

Plaintiff Mary Welsh ("Welsh") challenges the denial of benefits under her employer's long-term disability ("LTD") plan.  Welsh initiated this action against Defendant Ascension Health ("Ascension") in the Circuit Court in and for Santa Rosa County, Florida, following which Ascension timely removed the case based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.  The matter is now before the court on Welsh's motion to remand for lack of subject matter jurisdiction and Ascension's response.  For the reasons given below, the court GRANTS Welsh's motion and remands this matter to state court.

**Background**[1]

Ascension is a non-profit, tax-exempt corporation that describes its mission as performing the functions and carrying out the purposes of several regional religious orders

---

[1] In considering the issue of subject matter jurisdiction the court has reviewed, and addresses in its discussion below, affidavits and other evidence filed by the parties in support of, or in opposition to, the motion to remand. *See Sierminski v. Transourth Fin. Corp.*, 216 F.3d 945, 948-949 (11th Cir. 2000) (holding that district court was not limited to evidence provided at the time of filing petition for removal but rather could consider post-removal evidence in assessing removal jurisdiction).

affiliated with the Catholic Church.² In furtherance of this mission Ascension oversees a nationally integrated health network comprised of numerous nonprofit hospitals and other health care facilities ("health systems"), including Sacred Heart Health System, Inc., ("Sacred Heart") in Pensacola, Florida. Ascension is the corporate member of each of these health systems, which together employ over 100,000 persons in approximately twenty states. Eligible employees of the health systems may participate in disability plans sponsored and administered by Ascension; claims against the plans are handled by Sedgwick Management Services, Inc. ("Sedgwick").

Welsh formerly was employed by Sacred Heart as a registered nurse and participated both in Ascension's long-term and its short-term disability plans. After suffering from viral meningitis and problems with fatigue and a positive Epstein-Barr virus titer, Welsh stopped working in August 2003. Sedgwick approved her claim for short-term disability benefits for ninety days, the maximum period. Welsh later filed a claim for long-term benefits, which Sedgwick denied. Welsh appealed the denial of this claim to Sedgwick's appeals committee, but her appeal was rejected. Welsh then filed suit in state court alleging breach of contract and breach of fiduciary duty.³

According to Ascension's removal papers, although Welsh characterizes her claims as arising under state law the claims in fact implicate a federal statute, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Because Welsh's claims actually arise under §1132(a)(1)(B) of ERISA to recover benefits under the terms of her LTD plan, Ascension submits, this case is removable to federal court pursuant to the doctrine of complete preemption.⁴

---

² The religious orders include the Northeast, Southeast, East Central and West Central Provinces of the Daughters of Charity of St. Vincent de Paul, the Congregation of St. Joseph, and the Congregation of the Sisters of St. Joseph of Carondelet.

³ After removal Welsh filed an amended complaint in this court that corrects the name of the defendant but contains no substantive alterations, *i.e.*, the amended complaint names "Ascension Health" as defendant instead of "Ascension Health – IS Inc., d/b/a Ascension Health" but makes no other changes.

⁴ In relevant part, § 1132(a) provides that a civil cause of action may be brought by a "participant or beneficiary" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Moving for remand, Welsh argues that pursuant to 29 U.S.C. § 1003(b)(2) her state law claims are not subject to complete preemption by ERISA.[5] According to Welsh, the LTD plan at issue in this case is a church plan to which ERISA does not apply. Furthermore, Welsh asserts, Ascension did not elect to identify the church LTD plan as a qualified ERISA plan under 26 U.S.C. § 410(d) prior to Welsh's filing her claim in 2003.[6] For these reasons, Welch contends the court lacks subject matter jurisdiction and therefore should remand the case to state court.  In response, Ascension argues that careful parsing of the statute's plain language and reference to certain Department of Labor ("DOL") and Internal Revenue Service ("IRS") opinions yields the conclusion that its LTD plan is an ERISA plan, not a church plan.  Moreover, Ascension contends, there was no need to file a § 410(d) election because its non-church LTD plan is a welfare plan rather than a pension plan, and the election is only available for pension plans.  In any event, according to Ascension,  it made an election pursuant to § 410(d) in 2008, retroactively effective to 1998.

**Legal Standards**

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994);

---

[5] Title 29 U.S.C. § 1003(b)(2) provides:

(b) The provisions of this subchapter shall not apply to any employee benefit plan if--

* * *

(2) such plan is a church plan (as defined in section 1002(33) of this title) with respect to which no election has been made under section 410(d) of Title 26. . . .

29 U.S.C. § 1003(b)(2).

[6] In part, 26 U.S.C. § 410(d) provides:

Election by church to have participation, vesting, funding, etc., provisions apply.--

(1) In general.--If the church or convention or association of churches which maintains any church plan makes an election under this subsection (in such form and manner as the Secretary may by regulations prescribe), then the provisions of this title relating to participation, vesting, funding, etc. (as in effect from time to time) shall apply to such church plan as if such provisions did not contain an exclusion for church plans.

26 U.S.C. § 410(d)(1).

Case No. 3:08cv348/MCR/EMT

*Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir.1994). Accordingly, they have the power to hear only those cases that Congress or the Constitution has authorized them to hear. *Kokkonen*, 511 U.S. at 377. For this reason, statutes authorizing removal of actions to federal courts are to be strictly construed against removal. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Burns*, 31 F.3d at 1094 (stating that "removal statutes are construed narrowly; where the plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."); *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (indicating that because the jurisdiction of federal courts is limited "there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."). On a motion to remand, the burden of demonstrating the federal court's subject matter jurisdiction rests with the removing defendant and must be proven by a preponderance of the evidence. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1330 (11th Cir. 2006) (holding that removing defendant had burden of establishing subject matter jurisdiction on motion to remand action removed under Class Action Fairness Act); *Stanley v. Life Ins. Co.*, 426 F.Supp.2d 1275, 1282 (M.D.Fla. 2006) (stating that "[i]n complete preemption cases, the burden is on the defendant, as the party asserting jurisdiction to demonstrate the propriety of removal.") (internal quotation marks omitted). An action initiated in state court may be properly removed to federal court "if the claim is one 'arising under' federal law." *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). Whether a complaint "arises under" federal law is determined from the face of the complaint. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

In reviewing a motion to remand, the court must consider the "well-pleaded" allegations in the complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (explaining that under the well-pleaded complaint rule "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."); *Diaz*, 85 F.3d at 1505. The "complete preemption doctrine," however, exists as a corollary to the well-pleaded complaint rule. "When the

federal statute completely pre-empts the state-law cause of action, a claim which is within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial*, 539 U.S. at 8; *Caterpillar, Inc.*, 482 U.S. at 392 (noting that complete preemption creates federal question jurisdiction when the "pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.") (citations and internal quotation marks omitted).

Although the doctrine of complete preemption has limited applicability, the Supreme Court has found that it may be properly applied to ERISA. *See Stern v. International Business Machines, Corp.*, 326 F.3d 1367, 1371 (11th Cir. 2003). More specifically, the Supreme Court has held that ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), has such preemptive force that it converts an ordinary state common law complaint into one stating a federal claim. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (holding that "any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."). Four elements must be satisfied in order to establish that complete preemption exists under § 1132(a): (1) the plaintiff's complaint involves a relevant ERISA plan; (2) the plaintiff has standing to sue under the plan; (3) the defendant is an ERISA entity; and (4) the complaint seeks compensatory relief similar to what is available under § 1132(a); "often this will be a claim for benefits due under a plan." *Butero v. Royal Maccabees Life Ins., Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999); *see also Jones v. LMR International, Inc.*, 457 F.3d 1174, 1178 (11th Cir. 2006).

**Discussion**

The only element of the complete preemption analysis under 29 U.S.C. § 1132(a) that is at issue in this case is the first one, *i.e.*, whether Welsh's complaint involves a relevant ERISA plan. *Butero,* 174 F.3d at 1212. As an initial matter, as Ascension contends and Welsh apparently does not dispute, the court concludes that Ascension's

LTD plan is a "welfare plan" within the meaning of 29 U.S.C. § 1002(1).[7]  *See Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (identifying elements of welfare plan under § 1002(1)).  The court therefore proceeds to the first issue pertaining to the more specific focus of the parties' disagreement, which is whether Ascension's LTD plan should be considered a church plan within the meaning of 29 U.S.C. § 1002(33).  The court then addresses whether the election under 26 U.S.C. § 410(d) that Ascension filed in 2008 is effective retroactively to1998.

**Whether Ascension's LTD Plan is a Church Plan as Defined in 29 U.S.C. § 1002(33)**

The court begins its inquiry into the question of whether the plan in this case is a church plan under 29 U.S.C. § 1002(33) by examining the statute's plain language. *See Hughey v. United States*, 495 U.S. 411, 415, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (noting that the plain language of the statute is the starting point of any analysis of statutory interpretation). Section 1002(33)(A) provides that "[t]he term 'church plan' means a plan established and maintained . . . for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26." 29 U.S.C. § 1002(33)(A). Title 29 U.S.C. § 1002(33)(C)(i) further provides:

> For purposes of this paragraph—
>
> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or convention or association of churches.

---

[7] Title 29 U.S.C. § 1002(1), defines the terms "employee welfare benefit plan" and "welfare plan" as

> any plan, fund, or program which was . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) [ ] benefits in the event of . . . disability . . . ".

29 U.S.C. 1002(1).

29 U.S.C.A. § 1002(33)(C)(i). Additionally, § 1002(33)(C)(iv) provides that "[a]n organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv). Another provision of 29 U.S.C. § 1002(33)(C) defines the term "employee of a church or convention or association of churches" to include "an employee of an organization . . . which is controlled by or associated with a church or a convention or association of churches." 29 U.S.C. § 1002(33)(C)(ii)(II).

In this case, Welsh asserts, with uncontroverted evidence in support, that Ascension is both controlled by and associated with the Catholic Church. Therefore, Welsh concludes, Ascension's LTD plan must be deemed a church plan. Ascension does not dispute that it is associated with the Catholic Church.[8] Instead, Ascension makes a more nuanced argument. Based on its reading of 29 U.S.C. § 1002(33)(C)(i), Ascension contends there are three types of entities under § 1002(33) that may sponsor a church plan: (1) an actual church, (2) a convention or association of churches that is tax exempt under 26 U.S.C. § 501, and (3) an organization controlled by or associated with a church (or convention or association of churches) whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both. Ascension submits there can be no real disagreement that it is neither a church nor a convention or association of churches. Furthermore, according to Ascension, it also is not the third type of entity it says may sponsor a church plan because § 1002(33)(C)(i) requires that, in addition to being related to a church, the organization maintaining the plan must also have its "principal purpose or function" the administration or funding of an employee benefit. This is not, however, Ascension's principal purpose or function; instead, its stated principal purpose is the maintenance of a national health care system. Ascension further maintains that its reading of the statute is supported by IRS

---

[8] Indeed, in its removal papers Ascension concedes as much, describing itself as a "tax-exempt corporation associated with the Roman Catholic Church . . . ." Doc. 1 at 9. In its response Ascension makes similar statements, including describing itself as a "church-related entity sponsoring an ERISA welfare plan . . . ." Doc. 20 at 21.

Case No. 3:08cv348/MCR/EMT

private letter rulings and DOL advisory opinions, which have construed the "principal purpose" language as requiring a plan sponsor that wishes to maintain a church plan to establish an independent committee whose principal purpose is the administration of welfare benefits.  Ascension's LTD plan is not maintained by a committee having such a purpose but rather is maintained by Ascension itself. Ascension thus submits that under the plain language of 29 U.S.C. § 1002(33)(C)(i), which must be regarded as conclusive, its LTD plan does not qualify as a church plan.  Given that conclusion, Ascension maintains, its affiliation with the Catholic Church is irrelevant.

The Eleventh Circuit Court of Appeals has not directly addressed the issue of whether employee disability plans created by nonprofit hospital corporations qualify as "church plans" within the meaning of 29 U.S.C. § 1002(33), although the Courts of Appeals for the Fourth and Eighth Circuits have.[9]  *See Chronister v. Baptist Health*, 442 F.3d 648 (8th Cir. 2006), and *Lown v. Continental Casualty Co.*, 238 F.3d 543, 547 (4th Cir. 2001). As in this case, in both *Lown* and *Chronister* the plaintiff asserted the federal court lacked subject matter jurisdiction because the disability plan at issue was a church plan not governed by ERISA. *Chronister* in part adopted the analysis used in *Lown*, with both appellate courts concluding the nonprofit hospital corporation defendant was not a church or a convention/association of churches and was neither "controlled by" nor "associated with" such entities within the meaning of § 1002(33).  Thus the plan at issue was not a church plan. *Chronister*, 442 F.3d at 653-54; *Lown*, 238 F.3d at 548.

Neither of the parties in this case cites *Chronister.*  Ascension cites *Lown*, but only

---

[9] The number of district courts to consider the issue is greater, though still not extensive. *See, e.g., Rinehart v. Life Insurance Company of North America*, 2009 WL 995715 (W.D. Wa. 2009) (holding that disability plan was a church plan and therefore exempt from ERISA); *Goetz v. Greater Georgia Life Insurance Co.,* 554 F.Supp. 831 (E.D. Tenn. 2008) (disability plan was not a church plan); *Coleman v. Pikeville United Methodist Hosp.*, 2008 819038 (E.D. Ken. 2008) (disability plan was not a church plan); *Polk v. Dubuis Health* System, 2007 WL 2890262 (W.D.La. 2007) (medical plan was not a church plan); *Taylor v. Sisters of St. Francis Health Services, Inc.,* 2006 WL 2457202 (S.D. Ind. 2006) (disability plan was a church plan); *Catholic Charities of Maine, Inc., v City of Portland*, 304 F.Supp.2d 77 (D.Me. 2004) (health benefit plans were church plans); *Friend v. Ancillia Systems, Inc.*, 68 F.Supp.2d 969 (N.D.Ill. 1999) (severance plan was a church plan); *Duckett v. Blue Cross and Blue Shield of Alabama*, 75 F.Supp.1310 (M.D.Ala. 1999) (health care plan was not a church plan); *Health Const. Control v. Fuxan*, 1997 WL 725440 (E.D.La. 1997) (medical plan was not a church plan); and *Humphrey v. Sister of St. Francis Health Services, Inc.*, 979 F.Supp.781 (N.D.Ind. 1997) (pension plan was a church plan).

to criticize its analysis as fatally flawed, despite the fact the *Lown* court determined the LTD plan at issue in the case was not a church plan, the position Ascension takes here regarding its own plan.[10] According to Ascension, in essence the *Lown* court reached the correct result based on incorrect reasoning. Ascension contends that the *Lown* court only considered 29 U.S.C. § 1002(33)(C)(i)'s "church or [ ] a convention or association of churches" language, thereby improperly ignoring, and failing to apply, the "principal purpose or function" language the provision also contains. Consequently, Ascension submits, the *Lown* court failed to consider the "committee requirement" identified by the IRS and DOL, which Ascension asserts is crucial in distinguishing a church plan from an ERISA plan.

The courts in *Lown* and *Chronister* evidently were not asked to consider the specific interpretation of 29 U.S.C. § 1002(33)(C)(i) advanced in this case by Ascension or found it unnecessary to address the issue directly. Several district courts have been presented with at least a portion of the argument, however, and have disagreed with Ascension's position. In *Friend v. Ancillia Systems Inc.*, 68 F.Supp.2d 969 (N.D.Ill. 1999), the district court concluded that "section 1002(33)(C)(i) does not 'require' that the plan be maintained by an organization the principal purpose of which is administering or funding the plan. The statute merely 'includes' such plans in the definition of church plan . . . ." *Friend*, 68 F.Supp.2d at 973. Additionally, in *Catholic Charities of Maine, Inc. v. City of Portland*, 304 F.Supp.2d 77 (D.Me. 2004) ("*Catholic Charities I")*, the court stated that § 1002(33)(C)(i) does nothing more than provide "an alternative means of satisfying the 'church plan' definition . . . ." *Catholic Charities I*, 304 F.Supp.2d at 86 n.4.

More recently, in *Rinehart v. Life Insurance Company of North America*, 2009 WL 995715 (W.D.Wa. 2009), the court agreed with the view that 29 U.S.C. § 1002(33)(C)(i) does not limit the non-church organizations that can establish church plans to just those organizations whose principal purpose or function is the administration of a benefits plan. Rather, the court concluded, § 1002(33)(C)(i) "only acts to limit the church plan exception to situations where the benefits plan is administered (or funded) by a third party." *Id.* at 3.

---

[10] Doc. 20 at 17, n. 7.

In reaching this conclusion, the *Rinehart* court explained that there are two ways in which a plan established by a corporation that is controlled by or associated with a church can qualify as a church plan.  Section 29 U.S.C. § 1002(33)(C)(i) provides the first means and 29 U.S.C. § 1002(33)(C)(ii)(II) provides the second. In *Rinehart* the court contrasted the two sections, noting that, critically, § 1002(33)(C)(ii)(II) does not contain the "principal purpose" language contained in § 1002(33)(C)(i).  The absence of the "principal purpose" language in  § 1002(33)(C)(ii)(II) effectively results in "broaden[ing] the scope of the term 'church plan'" by "bring[ing] a plan established or maintained by a non-church organization within the general definition of a 'church plan' if that organization is 'controlled by' or 'associated with' a church." *Rinehart,* 2009 WL 995715, *3 (citing *Catholic Charities I*, 304 F.Supp.2d at 85). The court concluded that  "[t]his language necessarily increases the types of organizations which may establish and maintain 'church plans.'"  *Id.*

In this case, the court agrees with *Rinehart's* reading of 29 U.S.C. §§ 1002(33)(C)(i) and 1002(33)(C)(ii)(II), which is also consistent with the courts' interpretations in *Friend* and *Catholic Charities I.*  A fair reading of the plain language of § 1002(33)(C)(i) does not support the conclusion that there are three separate types of church plan sponsors, one of which may be an organization whose principal purpose is to administer or fund the plan. Rather, the statute identifies only two types of church plan sponsors, *i.e.,* churches and conventions or associations of churches.  In referencing an organization whose principal purpose is to administer or fund the plan, the statute merely describes an additional means by which a plan can be considered a church plan within the context of those two categories; it does not create a third category. The court must give effect to the plain meaning of 29 U.S.C. § 1002(33)(C)(i), which is clear and unambiguous. *See Birnholz v. 44 Wall Street Fund, Inc.*, 880 F.2d 335, 341 (11th Cir. 1989) (stating that "the cardinal rule of statutory construction is that when the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. . . ."). The court therefore concludes that, contrary to Ascension's position, § 1002(33)(C)(i) does not create a third type of entity under § 1002(33) that may sponsor a church plan.

Case No. 3:08cv348/MCR/EMT

To read 29 U.S.C. § 1002(33)(C)(i) as Ascension proposes would require the court to ignore other provisions of the statute which apply to Ascension and which result in the conclusion that Ascension's plan is a church plan. *See United States v. McLemore*, 28 F.3d 1160, 1162 (11th Cir. 1994) (cautioning that courts must not view single terms of a statute in isolation but rather must consider them within the entire statutory context) (citation omitted). First, as *Rinehart* explains, 29 U.S.C. § 1002(33)(C)(ii)(II) "broadens" the scope of the term by including as church plans those plans which have been established or maintained by non-church organizations, provided the organization is controlled by or associated with a church. *Rinehart,* 2009 WL 995715, *3. Two other provisions of § 1002(33) also support the view that Ascension's plan should be deemed a church plan. Specifically, § 1002(33)(A) describes a "church plan" as one established and maintained for the employees of a church or by a convention or association of churches. 29 U.S.C. § 1002(33)(A). Additionally, § 1002(33)(C)(iv) defines an "organization" as one "associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv). These provisions, read together with § 1002(33)(C)(ii)(II), precisely describe Ascension and its LTD plan: the plan was established and is maintained for Ascension's workers, and Ascension is a tax exempt organization that admittedly is controlled by or associated with the Catholic Church since it shares common religious bonds and convictions with the church.

Given the court's conclusion that the meaning of 29 U.S.C. § 1002(33)(C)(i) is plain from the face of the statute and that Ascension's LTD plan otherwise fits within the definition of a church plan under § 1002(33), there is no reason to consider Ascension's argument that the statute should be construed as requiring an organizational sponsor to establish an independent committee to maintain a church plan.[11] Nor need the court

---

[11] The court nevertheless that, as Ascension acknowledges, the IRS and DOL rulings and letters which support its construction of the statute may not be used or cited as legal precedent. *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (noting that opinion letters do not result from formal adjudications or notice-and-comment rulemaking and thus are not entitled to the sort of deference required by *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

consider Ascension's argument that the LTD plan at issue in this case should not be considered a church plan because Ascension's third party administrator, Sedgwick, is neither controlled by nor associated with a church as it must be in order for the plan to be a church plan.[12]

As explained above, the court concludes that for purposes of the instant motion Ascension's LTD plan should be deemed a church plan within the meaning of 29 U.S.C. § 1002(33)(C)(i).

### Whether Ascension's 26 U.S.C. § 410(d) Election Applies Retroactively

As an initial matter, Ascension asserts that it was unnecessary for it to file an election under 26 U.S.C. § 410(d) to have its LTD plan treated as an ERISA plan because, since its inception, the plan has been maintained as an ERISA plan, not a church plan. In light of the conclusion, above, that Ascension's LTD plan in this case in fact is a church plan, the court need not address this argument. The court nevertheless makes the following observations. Ascension's position is that under the DOL's view, as well as the applicable regulations, a 26 U.S.C. § 410 election is only available for pension plans, not welfare benefits plans such as its plan. The Eleventh Circuit appears not to have made the distinction Ascension does between pension plans and welfare benefits plans and the need to file an election under § 410(d). To the contrary, in *American Association of*

---

[12] In support of this contention Ascension points to the court's conclusion in *Friend* that if a plan hires a third party administrator the administrator must also be controlled by or associated with the church in order for the plan to retain its status as a church plan.

The court agrees with the proposition of law cited by Ascension. *See Friend*, 68 F.Supp.2d at 973 (stating that a plan administrator—who is hired by an organization that is controlled by or associated with a church—must also be controlled by or associated with the church for the welfare plan to maintain church plan status); *Rinehart*, 2009 WL 995715, *3 (explaining that 29 U.S.C. § 1002(33)(C)(i) "only acts to limit the church plan exception to situations where the benefits plan is administered (or funded) by a[n] [independent] third party."); and *Health Const. Control v. Fuxan*, 1997 WL 725440, *1 (E.D.La. 1997) (holding that although the disputed benefits plan was sponsored by religious order, and thus controlled by or associated with a church, it was not a church plan because it was administered by an independent third party administrator). Based on the evidence before it in this case, however, the court cannot find as a factual matter that Sedgwick serves as Ascension's third party plan administrator, which is the type of administrator implicated in the statute. *See Friend*, 68 F.Supp.2d at 973 (observing that the intent of § 1002(33)(C)(i) is "to require that if an organization controlled by or associated with a church wants to hire an administrator for its *plan*, the administrator must also be controlled by or associated with the church" in order for the plan to retain its status as a church plan) (emphasis added). Rather, the evidence reflects that Ascension serves as the plan administrator while Sedgwick serves only as the claims administrator. Therefore, assuming § 1002(33)(C)(i) applied in this case, the limitation of the church plan exception it describes would not.

Case No. 3:08cv348/MCR/EMT

*Christian Schools Voluntary v. United States*, 850 F.2d 1510 (11th Cir. 1988), discussing what it assumed to be a welfare benefit plan—not a pension plan—the court stated in dicta that "[c]hurch plans are not subject to Parts 1 and 4 of Subtitle B of Title 1 of ERISA [29 U.S.C. §§ 1021, 1107]," unless there is an election made under 26 U.S.C.A. § 410(d) to have participation, vesting, funding and other provisions of the Internal Revenue Code apply to the church plan." *Id.*, 850 F.2d at 1517. The implication of this statement is that a § 410(d) election for a church plan—specifically, a welfare benefit plan—must be made in order for the plan to be considered an ERISA plan. Moreover, the one district court that appears to have ruled on the issue of whether plan administrators can make a § 410(d) election for church welfare benefit plans as well as for pension plans is consistent with the observation made in *American Association*. *See Catholic Charities*, 304 F.Supp.2d at 90.

With respect to the retroactivity of its ERISA election, Ascension submits that, as permitted under two Treasury Regulations, 26 C.F.R. § 1.410(d)-1(c)(3) and (5), in 2008 it attached a 26 U.S.C. § 410(d) election to an amended return for the 1998 Plan Year and declared the election would be effective retroactively to 1998. Therefore, Ascension argues, even if its plan is deemed a church plan, it elected to qualify the plan as an ERISA plan prior to the time Welsh's claims arose in 2003.

Only two courts appear to have addressed the issue of whether ERISA preemption can be made retroactive. Both have rejected the assertion. In *Geter v. St. Joseph Healthcare Systems, Inc.*, 575 F.Supp.2d 1244 (D.N.M. 2008), the court concluded that the "statutory language does not authorize retroactive preemption for claims that arose when the church plan was still exempted from ERISA's provisions." Similarly, in *Catholic Charities of Maine, Inc.*, v. *City of Portland,* 319 F.Supp.2d 88 (D.Me. 2004) ("*Catholic Charities II")*, the court refused to permit retroactive preemption, stating that "the plain language of ERISA suggests that preemption occurs upon the 'making' or filing of a section 410(d) election." Based on the plain language of 29 U.S.C. § 1003(b), which provides that ERISA "shall not apply to any employee benefit plan if . . . such plan is a church plan ... with respect to which no election *has been made* under section 410(d) of Title 26," (emphasis added), and persuaded by the sound reasoning of *Geter* and *Catholic Charities II,* this court likewise concludes that preemption in this case began at the time of

Ascension's 2008 election and not before. Therefore, at the time Welsh's claims under the LTD plan arose in 2003 Ascension's church plan was not governed by ERISA.[13]

**Conclusion**

For the reasons discussed above, the court concludes that Ascension has not met its burden of establishing that subject matter jurisdiction is proper in this forum. Welsh's motion to remand must therefore be granted.

As a final matter, the court considers Welsh's request for attorney's fees for Ascension's improvident removal. The court may award attorney's fees for a remand "only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005). The central issues in this case involve rather complex, novel jurisdictional questions under ERISA which have not yet been directly addressed by the Eleventh Circuit and with respect to which, at least in part, the IRS and DOL have formed opinions different from those reached here. The court therefore concludes that Ascension relied on objectively reasonable grounds for removal when it asserted that Welsh's state law claims were completely preempted. Accordingly, Welsh's request for attorney's fees is DENIED.

---

[13] Ascension contends that Welsh will not be prejudiced by retroactive treatment of the LTD plan as an ERISA plan, because the plan was established and has always been maintained and administered as an ERISA plan for the benefit and protection of its participants, including Welsh. Asserting that Welsh—who previously has enjoyed the protections of ERISA—should not now be permitted to renounce ERISA coverage for herself as well as others and attempt to obtain relief under state law, Ascension cites *Duckett* v. *Blue Cross and Blue Shield of Alabama*, 75 F.Supp.2d 1310 (M.D. Ala. 1999). In *Duckett*, the court noted that the plaintiff had come forward with no evidence to challenge the defendant's assertion that it was not associated with or controlled by a church; as additional support for its conclusion that the plan before it was an ERISA plan rather than a church plan, the court further noted the evidence showed that the defendant complied with ERISA mandates; treated its plan as an ERISA plan; and represented to the IRS through certain tax forms that its plan was an ERISA plan. *Id.* at 1317.

In this case, unlike in *Duckett*, there is no dispute as to whether Ascension is controlled by or associated with a church. Ascension has conceded that it is. As in *Duckett*, Ascension has supplied evidence which suggests it has complied with ERISA requirements and has treated and represented its LTD plan as being an ERISA plan. Ascension's evidence, however, does not alter the court's conclusion in this case that the LTD plan at issue fits within the statutory definition of a church plan under 29 U.S.C. § 1002(33) as to which no 26 U.S.C. § 410(d) election had been filed at the time Welsh's claims arose in 2003. The court is unpersuaded that, based on *Duckett*, it should conclude that Ascension's LTD plan is properly treated as an ERISA plan.

Case No. 3:08cv348/MCR/EMT

Accordingly, it is ORDERED:

1. Plaintiff Mary Welsh's motion to remand (doc. 11) is GRANTED, to the extent this case is REMANDED to the Circuit Court in and for Santa Rosa County, Florida. Welsh's request for attorney's fees is DENIED.

2. The clerk is directed to take appropriate steps to effect the remand.

3. Defendant Ascension Health's pending motion for summary judgment (doc. 27) is DENIED, as moot.

**DONE and ORDERED** this 21st day of May, 2009.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**